**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:15-cv-00081-MR**

| | |
|---|---|
| **U.S. COMMODITY FUTURES** ) | |
| **TRADING COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **O R D E R** |
| ) | |
| **OTC INVESTMENTS LLC, FOREX** ) | |
| **CURRENCY TRADE ADVISORS,** ) | |
| **LLC, and BARRY C. TAYLOR,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Defendant Barry C. Taylor's

"Motion to Dismiss (with Prejudice) or in the Alternative: Motion for Summary

Judgment" [Doc. 59] and Plaintiff U.S. Commodities Futures Trading

Commission's Motion for Summary Judgment against Defendant Barry C.

Taylor [Doc. 60].

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This civil case arises out of a foreign currency exchange pool operated

by the Defendant Barry C. Taylor ("Taylor") in this District between 2011 and

2015.   On April 21, 2015, the Plaintiff U.S. Commodity Futures Trading

Commission ("CFTC") filed a Complaint for Permanent Injunction, Civil

Monetary Penalties, and Other Equitable Relief against Taylor and his companies, OTC Investments LLC ("OTC") and Forex Currency Trade Advisors, LLC ("FCTA").[1]  [Doc. 1].  The Complaint alleges that the Defendants committed fraud in connection with foreign currency exchange transactions, in violation of Section 4b(a)(2)(A) and (C) of the Commodity Exchange Act ("Act"), 7 U.S.C. § 6b(a)(2)(A), (C) and Commission Regulation 5.2(b)(1)-(3), 17 C.F.R. § 5.2b(1)-(3) ("Count I"); that the Defendants committed fraud while acting as commodity pool operators, in violation of Section 4$o$(1) of the Act, 7 U.S.C. § 6$o$(1) ("Count II"); and that the Defendants failed to register as commodity pool operators, in violation of Section 4m(1), 7 U.S.C. § 6m(1) ("Count III").  Contemporaneously with the filing of the Complaint, the CFTC moved the Court for an *Ex Parte* Restraining Order, which the Court granted after oral argument on April 22, 2015.  [Doc. 11].  On June 8, 2015, the Court entered an Order of Preliminary Injunction and Other Ancillary Relief against Defendant Taylor.  [Doc. 31].

---

[1] The Clerk made an entry of default as to OTC and FCTA on June 10, 2015.  [Doc. 34]. The CFTC, by way of a separate motion, has moved for the entry of a default judgment against these two companies.  The CFTC's motion for default judgment is addressed by separate Order.

On January 12, 2016, a criminal Bill Of Information was filed against Taylor in this District, charging him with one count of fraud while acting as a commodity pool operator, in violation of § 4*o* of the Commodity Exchange Act, 7 U.S.C. § 6*o*, and one count of concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(1).  [United States v. Taylor, Case No. 1:16-cr-00002-MR-DLH-1, Doc. 1].  On that same date, a Plea Agreement and a supporting Factual Basis were filed with the Court.  [Id., Docs. 3, 4].  On January 25, 2016, Taylor appeared with counsel before Magistrate Judge Dennis Howell and pleaded guilty to both counts in the Bill of Information.

The Factual Basis filed in support of the Plea Agreement establishes that Taylor engaged in a fraudulent scheme in violation of the Act to solicit more than $2.1 million from 18 pool participants located in North Carolina, other states within the United States, and Canada, to participate in a commodity pool that traded leveraged or margined retail off-exchange foreign currency contracts, commonly known as "forex."  As part of this illegal scheme, Taylor misappropriated $529,000 of pool participants' funds to enrich himself and pay his personal expenses, including but not limited to cash withdrawals or direct transfers of pool participants' funds from the Bank accounts held by his corporate entities, OTC and FCTA.  Taylor treated pool participants' funds as if they were his own personal funds, spending pool

participants' money on personal and living expenses. Additionally, Taylor acted as an unregistered commodity pool operator ("CPO") by operating and soliciting funds, securities, or property for a pooled investment vehicle that is not an eligible contract participant ("ECP"), as defined by the Act, and that engages in retail forex transactions. At the plea hearing, Taylor signed a certification that the information set forth in the Factual Basis is true and accurate. [Id., Doc. 12].

On July 5, 2016, this Court sentenced Taylor to a term of 135 months' imprisonment and ordered him to pay restitution to the victims of his criminal offenses in the amount of $2,195,244.01.[2] [Id., Doc. 28]. Taylor is currently incarcerated at the Federal Correctional Institution Ashland in Ashland, Kentucky.

While these civil and criminal proceedings were ongoing, Taylor filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the Western District of North Carolina, Case No. 15-20037. [Bankruptcy Case No. 15-20037, Doc. 1]. On February 29, 2016, that court ordered a bankruptcy discharge as to Taylor. [Id., Doc. 30]. On April 10, 2017, Taylor

---

[2] In conjunction with his plea of guilty, Taylor previously had consented to the entry of a forfeiture judgment in the amount of $2,200,000. [Id., Doc. 16].

filed a "Suggestion of Discharge" in this case, wherein he contends that his bankruptcy discharges "any and all debts allegedly owed to the Plaintiff herein."  [Doc. 56 at 1].

The CFTC now moves for summary judgment with respect to all of the claims asserted against Taylor, as well as for the entry of an order of permanent injunction and the imposition of civil monetary penalties.  [Doc. 60].  Taylor, who is proceeding *pro se* in this matter, seeks a dismissal of the claims against him, or in the alternative, the entry of summary judgment in his favor.  [Doc. 59].

Both parties have responded to the other's motion [Docs. 64, 65, 66]. Having been fully briefed, these matters are ripe for adjudication.

## III.  STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Thus, summary judgment must be entered "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party…."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Once the moving party establishes that there are no genuine issues of material fact, the burden

shifts to the non-moving party who "must do more than simply show that there is some metaphysical doubt as to material facts." Id. at 586.

Under Federal Rule of Civil Procedure 56(c)(1), the nonmoving party may not rely merely upon allegations or denials in its own pleadings but must set forth specific facts showing that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must cite competent, admissible evidence, and there must be sufficient evidence for the jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). "Where a party 'fails to properly support an assertion of fact or fails to properly address another party's assertion of fact' in responding to a summary judgment motion, the court is permitted to 'consider the fact undisputed for purposes of the motion,' and to 'grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.'" S.E.C. v. Farkas, 557 F. App'x 204, 207 (4th Cir. 2014) (quoting Fed. R. Civ. P. 56(e)(2)-(3)); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Because Taylor is proceeding *pro se*, he was advised on or about June 20, 2017, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to adequately respond to the CFTC's motion for summary judgment could result in the Court granting the CFTC's motion and entering

a judgment against him. [Doc. 62 at 4]. In his response to the CFTC's motion for summary judgment, Taylor does not offer any forecast of evidence or make any effort to dispute the forecast of evidence presented by the CFTC. Because Taylor failed to refute the Plaintiff's forecast of evidence, it is deemed undisputed for the purpose of the present motions. <u>See</u> Fed. R. Civ. P. 56(e)(2).

## IV. DISCUSSION

### A. Taylor's Motion to Dismiss/Motion for Summary Judgment

Taylor asserts two primary arguments in his motion to dismiss/motion for summary judgment. First, Taylor contends that any indebtedness he owes to the CFTC was discharged in bankruptcy, and that, in any event, only the bankruptcy court is the proper forum to litigate any dischargeability issues. Second, Taylor contends that because he has already been ordered to pay restitution in the criminal action, "any additional judgment in the same amount, or for the same indebtedness . . . violates the rule or doctrine which prohibits a double recovery." [Doc. 59 at 2].

#### 1. Nondischargeability of Civil Monetary Penalties

Under the Bankruptcy Code, a debt is non-dischargeable "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit and is not compensation for actual pecuniary loss, other

than a tax penalty."  11 U.S.C. § 523(A)(7); see also U.S. Dep't of Housing & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc., 64 F.3d 920, 927 (4th Cir. 1995) (noting that "discharge in bankruptcy is not intended to be a haven for wrongdoers").  Here, any civil monetary penalty imposed on Taylor by this Court would not be compensation for a pecuniary loss, but would rather be a penalty payable to and for the benefit of the CFTC. Accordingly, any civil monetary penalty imposed by this Court would not be dischargeable in bankruptcy.

Taylor's argument that only the bankruptcy court could make a determination of dischargeability is also without merit.  District courts and bankruptcy courts are both "vested with concurrent jurisdiction over nondischargeability proceedings arising under Bankruptcy Code § 523(a)(7)."  Whitehouse v. LaRoche, 277 F.3d 568, 576 (1st Cir. 2002). "Consequently, at their option, creditors seeking a nondischargeability determination need not submit to the jurisdiction of the bankruptcy court, but instead may invoke the jurisdiction of any appropriate nonbankruptcy forum either before or after the bankruptcy proceeding has been closed."  Id.  Thus, this Court has concurrent jurisdiction to make a nondischargeability determination under § 523(a)(7) regarding the civil monetary penalty sought by the CFTC.  As such, the CFTC was not required to file an objection or

take any other affirmative action in the bankruptcy court in order to receive a determination of nondischargeability for its requested civil monetary penalties.

### 2. Double Recovery

Alternatively, Taylor seeks dismissal of the CFTC's action on the grounds that restitution has already been ordered in his criminal prosecution and that granting judgment in favor of the CFTC in this civil action would constitute a "double recovery."

Taylor's argument on this point is meritless. While the Court may award restitution in a civil enforcement action brought under the Act, see United States v. Universal Mgmt. Servs., Inc., 191 F.3d 750, 760 (6th Cir. 1999), the CFTC is not seeking civil restitution here. Rather, it is seeking the award of civil monetary penalties. In any event, however, restitution and civil monetary penalties can be – and often are – awarded in the same civil action under the Act. See 7 U.S.C. §§ 13a-1(d)(1)(A), (d)(3)(A). Restitution awards in this context are measured by the amount invested by customers less any refunds given to them by defendants, while civil monetary penalties are based on the amount of monetary gain to defendants as a result of the violative conduct. See CFTC v. PMC Strategy, LLC, No. 3:11cv73, 2013 WL 1349177, at *8 (W.D.N.C. Apr. 3, 2013) (Mullen, J.). As such, the law allows

for the imposition of both restitution and criminal monetary penalties for the same conduct.

For all of these reasons, the Court concludes that Taylor's motion for dismissal of CFTC's action or, in the alternative, for summary judgment must be denied.

## B. CFTC's Motion for Summary Judgment

The Court now turns to the CFTC's motion for summary judgment. Specifically, the CFTC seeks summary judgment on its claims of fraud (Counts I and II) and its claim for failure to register as a commodity pool operator (Count III). It also seeks the entry of a permanent injunction and the award of civil monetary penalties against Taylor.

### 1. Collateral Estoppel

The CFTC first argues that Taylor is collaterally estopped from re-litigating any facts and issues in this case because such facts and issues are identical to what the criminal matter already decided.

Collateral estoppel "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir. 2004) (quoting

<u>Sedlack v. Braswell Servs. Grp., Inc</u>., 134 F.3d 219, 224 (4th Cir. 1998)). To

apply collateral estoppel to an issue or a fact, the proponent must show that:

> (1) the issue or fact is identical to the one previously
> litigated; (2) the issue or fact was actually resolved in
> the prior proceeding; (3) the issue or fact was critical
> and necessary to the judgment in the prior
> proceeding; (4) the judgment in the prior proceeding
> is final and valid; and (5) the party to be foreclosed
> by the prior resolution of the issue or fact had a full
> and fair opportunity to litigate the issue or fact in the
> prior proceeding.

<u>Microsoft</u>, 355 F.3d at 326.

All five elements of the collateral estoppel doctrine are met here. First,

it is undisputed that the facts and issues underlying the criminal charges to

which Taylor pled guilty are the same facts and issues underlying the CFTC's

fraud claims against Taylor in this case. Taylor pled guilty to fraud by a

commodity pool operator, a violation of 7 U.S.C. §§ 6*o* and 13(a)(2).  The

criminal fraudulent scheme to which Taylor pled guilty is the same fraudulent

scheme that is alleged in the instant matter.  Both cases involve exactly the

same material misrepresentations, material omissions, and misappropriation

of customer funds.  A guilty plea or a guilty verdict in a criminal matter can

prevent a party from re-litigating the same issues in a subsequent civil

proceeding.  See <u>S.E.C. v. Farkas</u>, 557 F. App'x 204, 206 (4th Cir. 2014)

(concluding that guilty verdict in criminal securities fraud case collaterally

estoped defendant from denying liability for civil securities fraud); <u>Williams v. Comm'r of Internal Revenue</u>, 498 F. App'x 284, 291 n.6 (4th Cir. 2012) (concluding that guilty plea in criminal tax evasion case had same conclusive effect as trial for purposes of collateral estoppel in civil tax fraud case).

Second, all of the issues and factual disputes in this proceeding were actually resolved in the criminal case. Taylor pled guilty pursuant to a written Plea Agreement. The Plea Agreement was supported by a Factual Basis filed by the Government. At the plea hearing Taylor, represented by counsel, signed a certification that the statements and information set forth in the Factual Basis were true and accurate. The Factual Basis sets forth precisely the same facts alleged in the CFTC's Complaint. Thus, the acceptance of Taylor's guilty plea fully resolved all of the issues and established all of the facts regarding his fraudulent solicitation, misappropriation, and false statements in the criminal proceeding. This is the exact factual basis that underlies the claims in this action.[3]

---

[3] Taylor was not criminally charged with failing to register as a CPO in violation of 7 U.S.C. § 6m. However, Taylor admitted as part of the Plea Agreement that he was acting as a CPO at all time relevant to the criminal action. Further, he admitted in his Answer in the present civil action that he was not registered as a CPO. [Doc. 33 at ¶ 7]. Accordingly, Taylor is now estopped from relitigating the issue of whether he failed to registered as a CPO in violation of the Act.

Third, the facts to which Taylor admitted and which were incorporated in the Plea Agreement's Factual Basis formed the basis for his criminal conviction and sentencing. As such, they were critical and necessary to the criminal judgment.

Fourth, the judgment in the criminal proceeding is final and valid. This Court sentenced Taylor on July 5, 2016, to a term of 135 months' imprisonment. Pursuant to the written Plea Agreement, Taylor waived his right to contest the conviction except for claims of ineffective assistance of counsel or prosecutorial misconduct. Taylor filed a direct appeal, which the Fourth Circuit Court of Appeals dismissed on March 17, 2017. [Doc. 47]. Accordingly, the criminal judgment is now final and valid.

Finally, Taylor had a full and fair opportunity to litigate these issues and facts in the criminal proceeding. Taylor was represented by counsel in the criminal proceeding and made a knowing and voluntary plea of guilty.

For all of these reasons, the Court concludes that Taylor is precluded from relitigating the fact and issues conclusively established by his criminal conviction. Accordingly, the Court concludes that the doctrine of collateral estoppel entitles the CFTC to summary judgment as to Taylor on all of the claims asserted in the CFTC's Complaint.

## 2. Count I: Violations of 7 U.S.C. §§ 6b(a)(2)(A), (C) and 17 C.F.R. 5.2(b)(1) and (3)

Even if the doctrine of collateral estoppel did not apply, the CFTC is entitled to summary judgment as to Count I because the undisputed forecast of evidence establishes that Taylor violated 7 U.S.C. §§ 6b(a)(2)(A), (C) and 17 C.F.R. 5.2(b)(1) and (3) by fraudulent means.

Under Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A) and (C), it is unlawful for any person, in connection with any order to make or the making of any contract of sale of any commodity for future delivery, for or on behalf of any other person, (A) to cheat or defraud or attempt to cheat or defraud other persons, and (C) to willfully deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract. Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1) and (3), prohibit engaging in such conduct by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail Forex transaction.

The undisputed forecast of evidence presented by the CFTC establishes that Taylor violated Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A) and (C), and Regulations 5.2(b)(1) and (3), 17 C.F.R. §

5.2(b)(1) and (3), by failing to disclose material facts to actual and prospective pool participants, misrepresenting material facts to actual and prospective pool participants, misappropriating their funds in connection with the order to make or the making of a futures contract, and failing to disclose that misappropriation to pool participants, for or on behalf of actual and prospective pool participants, with the use of interstate wires for transfer of funds, websites, and other electronic communication devices. Accordingly, the Court concludes that the CFTC is entitled to summary judgment on the claim of fraud asserted in Count I.

### 3. Count II: Fraud by a CPO in Violation of 7 U.S.C. § 6*o*(1)

Section 1a(11)(A) of the Act, 7 U.S.C. § 1a(11)(A), defines a CPO as any person engaged in a business that is of the nature of a commodity pool and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, for the purpose of trading in commodity interests. Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1), prohibits a CPO from using the mails or any other means of interstate commerce, directly or indirectly:

> (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

(B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

7 U.S.C. § 6o(1).

CFTC has presented a forecast of evidence, which Taylor does not dispute, that Taylor acted as a CPO because he operated or solicited funds, securities, or property for a commodity pool and engaged in forex transactions. Furthermore, the undisputed forecast of evidence establishes that Taylor employed a device, scheme or artifice to defraud pool participants and prospective pool participants and engaged in a transaction, practice or course of business which operated as a fraud or deceit upon pool participants and prospective pool participants in violation of Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B), including by making fraudulent representations regarding Taylor's trading expertise, guaranteeing profits and interest in connection with futures trading, failing to disclose the risks of trading commodity futures, misappropriating pool participants' funds, failing to disclose this misappropriation of pool participants' funds, and making fraudulent representations regarding trading losses and investment performance and activities. Accordingly, the Court

concludes that the CFTC is entitled to summary judgment on its claim of a violation of § 6*o*(1) as stated in Count II.

### 4. Count III: Failure to Register as CPO in Violation of Section 6m(1)

Section 4m(1) of the Act, 7 U.S.C. § 6m(1), makes it unlawful for any CPO, unless registered with the Commission, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO. The undisputed forecast of evidence presented by the CFTC establishes that Taylor acted as a CPO and failed to register with the Commission as a CPO in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1). Accordingly, the Court concludes that the CFTC is entitled to summary judgment with respect to Count III of the Complaint.

### 5. Civil Monetary Penalty

Having determined that the CFTC is entitled to summary judgment with respect to all of its claims, the Court now turns to the relief requested by the CFTC. Under Section 6c(d)(1)(A) of the Act, 7 U.S.C. § 13a-1(d)(1)(A), the Court may impose a civil penalty on any person who commits a violation of the Act. Such civil penalty may be the greater of (1) triple the monetary gain to defendant for each violation of the Act, or (2) $140,000 for each violation of the Act. 7 U.S.C. § 13a-1(d)(1)(A), 17 C.F.R. § 143.8. In the Complaint,

the CFTC seeks the imposition of such a penalty. [Doc. 1 at 21]. In its summary judgment brief, the CFTC requests a civil monetary penalty in the amount of one million dollars ($1,000,000), plus post-judgment interest, which the CFTC represents is "approximately twice [Taylor's] monetary gain." [Doc. 60-1 at 25].

"The Court is free to fashion a civil monetary penalty appropriate to the gravity of the offense and sufficient to act as a deterrent." PMC Strategy, LLC, 2013 WL 1349177, at *8. In determining the extent of a civil penalty for violations of the Act, courts are to focus on the nature of the violations and whether they involved core provisions of the Act, the relationship of the violations at issue to the regulatory purposes of the Act, whether scienter was involved, the consequences flowing from the violative conduct, financial benefits to the defendant, and harm to customers or the market. Id. at *8 (citation omitted). Conduct that violates the core provisions of the Act, such as investor fraud, is considered extremely serious, regardless of the existence of mitigating circumstances. Id.

Here, the undisputed forecast of evidence presented by the CFTC establishes that Taylor engaged in knowing, protracted, blatant and egregious conduct constituting fraud. This is not "a situation involving an isolated 'mistake' arising from an ambiguous statutory duty or from

circumstances that are unique and unforeseeable." <u>JCC, Inc. v. CFTC</u>, 63 F.3d 1557, 1571 (11th Cir. 1995). Taylor's violations resulted in substantial personal gain to him in the amount of at least $529,000 and direct and tangible harm to pool participants. Under these circumstances, the Court finds that a civil monetary penalty in the amount of $1,000,000 is appropriate. 7 U.S.C. § 13a-1(d)(1)(A); 17 C.F.R. § 143.8.

### 6. Permanent Injunction

The Act allows the CFTC to bring an action in the proper district court to enjoin an act or practice constituting a violation of any provision of the Act or any Regulation or order thereunder and to enforce compliance therewith. 7 U.S.C. § 13a-1(a). This Court must grant a permanent or temporary injunction or restraining order upon a proper showing. 7 U.S.C. § 13a-1. "Permanent trading, solicitation and registration bans are appropriate when a defendant's violation of the [Act] and/or Regulations poses a threat to the integrity of the markets regulated by the CFTC." <u>CFTC v. Harrison</u>, 255 F. Supp. 3d 645, 646 (D.S.C. 2015) (citations omitted). Because fraud is one of the preeminent threats to market integrity, many district courts in the Fourth Circuit have imposed permanent bans on market activity in response to the same types of fraudulent conduct as engaged in by Taylor. <u>Id.</u>; <u>see also</u> <u>CFTC v. Smith</u>, No. 1:10-cv-00009, 2012 WL 1642200, at *12 (W.D.Va.

Apr. 16, 2012) (Jones, J.) ("The egregious, systematic and widespread nature of [defendant's] fraudulent conduct warrants imposition of a permanent injunction against him."); CFTC v. Hall, 49 F.Supp.3d 444, 447 (M.D.N.C. 2013) (Hall, J.) (ordering permanent trading and registration bans in fraud case); CFTC v. McCall Business Grp., LLC, No. 3:08-cv-00445-W, 2010 WL 1665287, at *6 (W.D.N.C. Apr. 23, 2010) (Whitney, J.) (same); CFTC v. Hayes, No. 4:06-cv-130, 2007 WL 858772, at *3-4 (E.D.Va. Mar. 13. 2007) (Smith, J.) (same); CFTC v. Poole, No. 1:05-cv-00859, 2006 WL 1174286, at *6-7 (M.D.N.C. May 1, 2006) (Osteen, J.) (same).

In this case, Taylor admitted to knowingly defrauding approximately eighteen different pool participants in a forex pooled investment vehicle for a period of at least four years, using various schemes and artifices to perpetrate these frauds. Taylor further admitted to misappropriating at least $529,000 of the funds of the pool participants in the course of this extensive series of frauds. As such, the Court finds that Taylor's conduct poses a significant threat to the integrity of the markets regulated by the CFTC. Accordingly, the Court concludes that a permanent injunction, according to the terms set forth in this Order, is warranted and appropriate.

## V. CONCLUSION

Based on the foregoing, the Court concludes that the undisputed forecast of evidence establishes that Defendant Taylor is liable for the claims alleged, that the imposition of a civil monetary penalty against Taylor is appropriate, and that the Plaintiff CFTC is entitled to the entry of an injunction permanently enjoining and restraining Defendant Taylor from engaging in commodities trading as more fully delineated below. The Court further concludes that Defendant Taylor's summary judgment motion is without merit and should be denied.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff U.S. Commodities Futures Trading Commission's Motion for Summary Judgment against Defendant Barry C. Taylor [Doc. 60] is **GRANTED** and the Defendant Barry C. Taylor's Motion for Summary Judgment [Doc. 59] is **DENIED**.

**IT IS FURTHER ORDERED** that:

A.     Taylor shall pay a civil monetary penalty ("CMP") in the amount of $1,000,000, plus post-judgment interest ("CMP Obligation"). Taylor's liability for such CMP shall be joint and several with his co-Defendants, OTC Investments LLC and Forex Currency Trade Advisors, LLC.

B.	Post-judgment interest on the CMP Obligation shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

C.	Taylor shall pay the CMP Obligation by making electronic funds transfer, U.S. Postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made by other than electronic funds transfer, the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> Attn: Accounts Receivables --- AMZ 340
> E-mail Box: 9-AMC-AMZ-AR-CFTC
> DOT/FAA/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, Oklahoma 73169
> Telephone: (405) 954-5644

If payment by electronic transfer is chosen, Taylor shall contact Linda Zurhorst or her successor at the above address to receive payment instructions and shall fully comply with those instructions.  Taylor shall accompany payment of the CMP with a cover letter that identifies Taylor and the name and docket number of the proceedings.  Taylor shall simultaneously submit copies of the cover letter and the form of payment to:

(1) the Director, Division of Enforcement, Commodities Future Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and (2) the Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that: Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendant Taylor, individually and by or on behalf of any entity, is hereby permanently restrained, enjoined, and prohibited from directly or indirectly:

A.    Making or seeking to make any contract of sale of any commodity for future delivery for or on behalf of, or with, any other person;

B.    Acting as a commodity pool operator, as that term is defined in Section 1a(11) of the Act, 7 U.S.C. § 1a(11) (2012), or as an associated person of a commodity pool operator, by use of the mails or any means or instrumentality of interstate commerce;

C.    Acting as a commodity trading advisor or commodity pool operator, as that term is defined in Section 1a(11) of the Act, 7 U.S.C. § 1a(11) (2012), or making use of the mails or any means or instrumentality of interstate commerce in connection with his business as such commodity trading advisory or commodity pool operator;

D.     Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

E.     Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2014)) for his own personal account or for any account in which he has a direct or indirect interest;

F.     Having any commodity interests traded on his behalf;

G.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

H.     Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

I.     Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and/or

J.      Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2014)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38)

24

(2012)), registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

Judgment consistent with this Order shall be entered contemporaneously herewith.

**IT IS SO ORDERED.**

Signed: January 19, 2018

Martin Reidinger
United States District Judge