**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:15-cv-00081-MR**

| | |
|---|---|
| **U.S. COMMODITY FUTURES TRADING COMMISSION,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **O R D E R** |
| ) | |
| **OTC INVESTMENTS LLC, FOREX CURRENCY TRADE ADVISORS, LLC, and BARRY C. TAYLOR,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Motion for Final Judgment

by Default Against Defendants OTC Investments and Forex Currency Trade

Advisors ("Motion for Default Judgment") [Doc. 63] filed by Plaintiff U.S.

Commodities Futures Trading Commission ("CFTC" or "Commission").

Having considered the Commission's well-pleaded Complaint and the

Memorandum in Support of the Motion for Default Judgment, including the

supporting materials cited therein, the Commission's Motion for Default

Judgment is granted. The Court finds that there is good cause for the entry

of this Order and that there is no just reason for delay. The Court therefore

directs the entry of the following Findings of Fact, Conclusions of Law,

Permanent Injunctive Relief, Civil Monetary Penalties, and Other Miscellaneous Provisions pursuant to Section 6c of the Commodity Exchange Act (the "Act"), 7 U.S.C. § 13a-1 (2012), as set forth herein.

## I.  RELEVANT PROCEDURAL HISTORY

1.  On April 21, 2015, the Commission filed this action against Defendant Barry C. Taylor ("Taylor") and Defendants OTC Investments LLC ("OTC") and Forex Currency Trade Advisors, LLC ("FCTA").  The Commission alleges that Defendants violated core anti-fraud provisions of the Act, 7 U.S.C. §§ 1 *et seq.* (2012), and the Commission Regulations promulgated thereunder (the "Regulations"), 17 C.F.R. §§ 1 *et seq.* (2014), by fraudulently soliciting at least $2.4 million from participants in an unregistered commodity pool Defendants operated, by misappropriating at least $529,000 of those funds, and by issuing false or misleading accounts statements and other communications to pool participants to conceal their fraud.  [Complaint, Doc. 1].

2.  The Commission properly served Defendants OTC and FCTA with the Complaint and summons through their registered agent, Taylor, on April 29, 2015.  [Docs. 15, 16].  The Commission also properly served Taylor through personal service on the same date.  [Doc. 14].  Taylor filed an Answer to the Complaint on June 9, 2015 [Doc. 33] and summary judgment

2

is being entered against him contemporaneously herewith. Neither OTC nor FCTA appeared or answered the Complaint within the time permitted by Federal Rule of Civil Procedure 12(a)(1). On June 10, 2015, an Entry of Default was entered against OTC and FCTA. [Doc. 34]. As such, this Court finds that the well-pleaded allegations of the Complaint concerning the Defendants' liability are admitted and shall be taken as true. Fed. R. Civ. P. 8(b)(6) (allegations other than those relating to damages are admitted if a responsive pleading is required and the allegations are not denied). Federal Rule of Civil Procedure 55(b) authorizes this Court to enter a default judgment against a properly-served defendant who fails to timely file a responsive pleading, and this Court finds that the well-pleaded allegations of the Complaint support the relief sought.

## II.  FINDINGS OF FACT

### A.  The Parties

3.     Plaintiff U.S. Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1 *et seq.*, and Commission Regulations, 17 C.F.R. §§ 1.1 *et seq.*

4.     Defendant OTC is a Nevada limited liability company formed by Taylor on or around July 18, 2005. Defendant FCTA is a North Carolina

limited liability company formed by Taylor on or around December 3, 2007. OTC and FCTA were located in Franklin, North Carolina.  Taylor was the principal and held himself out to the public as the managing partner of OTC and FCTA.[1]  Taylor also maintained the records for these entities.  Neither OTC nor FCTA has ever been registered with the Commission in any capacity.

### B.    The Forex Pool and Solicitation of Pool Participants.

5.    OTC and FCTA engaged in the business of operating an investment pool for the purpose of soliciting and accepting funds from pool participants for entering into margined or leveraged agreements, contracts, or transactions in the foreign exchange market on behalf of OTC's and FCTA's pool participants.  The foreign exchange market ("Forex") is a global decentralized market for the trading of currencies.  Taylor maintained and controlled two bank accounts at United Community Bank ("UCB"), one in the name of OTC from April 2007 until April 2015 and one in the name of FCTA from January 2013 until April 2015 (collectively, the "UCB accounts").  Both accounts are now closed.

---

[1] There was a second officer of OTC listed by the Nevada Secretary of State.  There is, however, no indication in the record before the Court that this individual had any involvement in the scheme at issue.

6.     From August 1, 2011 through April 21, 2015 (the "Relevant Period"), Taylor solicited eighteen (18) members of the public ("pool participants") to participate in the Forex commodity pool.  As a result of these solicitations, pool participants deposited an aggregate of approximately $2.5 million in the UCB accounts. Most of the pool participants resided in North Carolina.

7.     Taylor represented himself to these participants as an expert in Forex trading and claimed he had created a computer software program that could track the Forex market and enable him to make investments that generated a very high rate of return.

8.     In a "Fee Schedule" he distributed to pool participants and prospective pool participants, Taylor guaranteed that participants would receive a minimum net return of 2% per month.  He also assured existing and prospective pool participants that he would only receive "administrative fees and commissions" from "any profits remaining after the Applicant has received a minimum of 2% net return monthly on their account balance."  In the Fee Schedule, Taylor guaranteed that "the maximum loss to be sustained, at which time all trading shall cease, is fifteen per cent (15%) of original principal."

## C.    The Forex Trading Accounts and Trading Losses

9.    In February 2013, Taylor opened a Forex Capital Markets (FXCM) trading account in the name of OTC.  In May 2013 and March 2014, respectively, Taylor opened two Forex trading accounts at Retail Foreign Exchange Dealer (RFED) Gain Capital Group, LLC ("Gain"), in the name of FCTA.[2]  Taylor was authorized to execute trades on behalf of each of these three accounts.

10.    None of the Forex trading accounts were ever registered as a commodity pool operator ("CPO") as required by federal regulations.  Federal regulations require that Forex CPOs register with the CFTC, unless every participant in the pool individually qualifies as an "eligible contract participant"[3] ("ECP").  None of Taylor's investors qualified as ECPs.  Taylor frequently moved funds between the UCB accounts and used funds from the UCB accounts to fund the Forex trading accounts.

11.    Contrary to Taylor's promises of steady profits, with commissions and fees to be limited to periods of profitable trading in excess of 2% per

---

[2] The one FXCM trading account and the two Gain trading accounts are collectively referred to herein as the "Forex trading accounts."

[3] In order to be considered an ECP, an individual must either (1) have assets of more than $10 million, or (2) have assets of more than $5 million and enter "into the agreement, contract, or transaction in order to manage the risk associated with an asset owed or liability incurred, or reasonably likely to be owned or incurred, by the individual."  7 U.S.C. § 1a(18)(A)(xi).

month, Taylor traded only a portion of pool participants' funds in Forex. Between February 1, 2013 and April 30, 2015, Taylor made deposits totaling approximately $1,486,000 (of the approximately $2.5 million in funds he solicited) into the Forex trading accounts. During that same time period, however, of that amount he withdrew more than half of the pool participants' money from the Forex trading accounts, approximately $834,000.

12. Taylor traded in the Forex trading accounts during each of the twenty-seven months he was operating them. While Taylor managed a small profit the first month of trading, significant trading losses were suffered thereafter. The total realized losses between February 2013 and April 2015 were over $660,000 due to trading losses, fees and commissions to FXCM and Gain. For the remaining twenty-six months, the accumulated monthly trade balance was negative, and, for most of this period, Taylor maintained accumulated trading losses in the hundreds of thousands of dollars.

13. Taylor knew there were no profits (except for the first month) to distribute to pool participants. Because there were continuous and substantial overall trading losses, all funds that Taylor used for his personal use and any payments to pool participants came from deposits of other pool participants, not from any trading profits, in the nature of a Ponzi scheme.

As of April 30, 2015, the Forex trading accounts collectively contained only $26,278 and the UCB accounts only $3,016.22.

### D. The Issuance of False Statements and Misappropriation of Pool Participant Funds

14. Not only did Taylor fail to cease trading when the "maximum loss" of 15% of principal was reached, as promised by the Fee Schedule, but he also failed to report losses to the pool participants.

15. During the time he was losing money in the Forex markets, Taylor sent the pool participants false monthly statements, usually by email, which fraudulently represented that their principal was intact and that they were realizing the promised profits. When pool participants asked to withdraw their profits, Taylor drew from the principal invested by others to make the Ponzi-style payments. Taylor did this to disguise his trading losses and to cause the participants to leave their remaining balances in his control.

16. Taylor also convinced some of the participants to reinvest their "commissions" rather than accepting profit payments. Furthermore, contrary to the express terms of the Fee Schedule, Taylor admitted withdrawing approximately $100,000 per year as a "salary."

17. In addition, Taylor sent fraudulent communications, typically by email, to the pool participants with false statements regarding his investment

activities.  These emails were designed to mislead the victims about the loss of their principal investments so they would not seek to withdraw their money.

18.    For example, in January 2015, Taylor sent pool participants emails claiming that he had halted Forex trading "due to the events of January 15[4] with the Swiss National Bank and the subsequent moves in the foreign exchange market and defaults by several of the brokerage firms."  In fact, the OTC account at FXCM had been closed months earlier, Taylor actively traded in the two Gain accounts during this time, and the events in Switzerland had no relationship to any of Taylor's Forex losses.  Taylor admitted he perpetrated this artifice because he knew he needed to begin informing participants of the losses and seized on the Swiss news event as an excuse.

19.    By way of additional fraudulent email communications, Taylor created a fictitious person he named "Anthony Scaderia," in an attempt to calm investors, telling them that "Scaderia" was responsible for trading losses and falsely claimed he was going to sue "Scaderia."  Taylor even solicited additional money from some of the pool participants to purportedly use to hire lawyers to pursue this imaginary lawsuit.

---

[4] On January 15, 2015, the Swiss National Bank removed the currency cap it had maintained on the Swiss franc's value against the euro. Although this caused sudden movements in the franc's value against the euro, trading was never suspended.

20.    Despite Taylor's promises to participants that he would not claim any commissions or fees for himself until after the promised profits were realized, Taylor nevertheless misappropriated participant's money from the UCB accounts for his own use.

21.    During the Relevant Period, Taylor withdrew at least $16,000 from these accounts in the form of ATM withdrawals and at least $155,000 in the form of checks made out to "Cash." Taylor used the debit cards associated with these accounts for over $270,000 in personal expenditures and made over $88,000 in electronic payments for personal expenses.  In total, Taylor used over $529,000 in pool participant funds for cash withdrawals and personal expenditures.

## III.    CONCLUSIONS OF LAW

### A.    Jurisdiction and Venue

22.    This Court has jurisdiction over the parties and subject matter of this action pursuant to the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1 *et seq.* (2012).  Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e)).

### B.    Default Judgment is Appropriate

23.    A party may request the entry of default judgment following the entry of default.  Fed. R. Civ. P. 55(b)(2).  Rule 55 of the Federal Rules of

Civil Procedure authorizes the entry of a default judgment when a defendant fails "to plead or otherwise defend" in accordance with the Rules. <u>CFTC v. PMC Strategy, LLC</u>, 903 F.Supp.2d 368, 375 (W.D.N.C. 2012) (citations omitted); Fed. R. Civ. P. 55(b)(2). Although the clear policy of the Rules is to encourage dispositions of claims on their merits, trial judges are vested with discretion, which must be liberally exercised, in entering such judgments. <u>United States v. Moradi</u>, 673 F.2d 725, 727 (4th Cir. 1982) (citing Fed. R. Civ. P. 55(c)).

24. Upon entry of default, the well-pleaded allegations in the complaint are to be taken as true for purposes of establishing liability. Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the damages – is admitted if a responsive pleading is required and the allegation is not denied."). The Court must then determine whether the unchallenged facts constitute a legitimate cause of action. <u>Ryan v. Homecomings Fin. Network</u>, 253 F.3d 778, 780 (4th Cir. 2001) (defaulting defendant admits plaintiff's well-pleaded allegations of fact). "If the court finds that liability is established, it must then determine damages. Although[ ] the Court must make an independent determination regarding damages, an evidentiary hearing is not required; rather, the Court may rely on affidavits or documentary evidence in the record to determine the appropriate sum." <u>PMC Strategy</u>, 903 F.Supp.2d

at 375 (citations omitted).  The Court may also grant injunctive relief by default judgment.  <u>See id.</u> at 380-81 (awarding injunctive relief, restitution, and a civil penalty on default judgment without holding an evidentiary hearing).

25.    All of the factors are present for the Court to enter default judgment against OTC and FCTA in this case.  These defendants were properly served with the summons and complaint.  OTC and FCTA failed to answer or otherwise defend.  Default was properly entered and these defendants have not sought to set aside the entry of the default or otherwise appeared in the action.  Finally, the well-pleaded allegations of the Complaint establish liability for the violations at issue.

### C.    OTC and FCTA are Liable for Taylor's Acts

26.    Taylor was the principal and acted as and held himself out to the public to be the managing member of OTC and FCTA.  Any acts or omissions of Taylor, as the principal of OTC and FCTA, are deemed acts or omissions of OTC and FCTA for purposes of the Act and the Regulations promulgated thereunder.  7 U.S.C. § 2(a)(1)(B); 17 C.F.R. § 1.2.

27.    As such, OTC and FCTA are charged with and are strictly liable for all acts and omissions of Taylor, which occurred in his capacity as employee and agent of these defendants, as described or relied upon herein.

CFTC v. McCall Business Group, LLC No. 3:08-cv-00445-W, 2010 WL 1665287, *5 (Apr. 23, 2010) (Whitney, J.) (citing Rosenthal & Co. v. CFTC, 802 F.2d 963, 966 (7th Cir. 1986); Dohmen-Ramirez & Wellington Advisory, Inc. v. CFTC, 837 F.2d 847, 857-58 (9th Cir. 1988)).

### D. OTC and FCTA Violated Section 6b(a)(2)(A), (C) of the Act and 17 C.F.R. § 5.2(b)(1), (3) of the Regulations

28.    Under Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A),  (C), it is unlawful for any person, in connection with any order to make or the making of any contract of sale of any commodity for future delivery, for or on behalf of any other person, (A) to cheat or defraud or attempt to cheat or defraud other persons, and (C) to willfully deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract.  Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3), prohibit engaging in such conduct by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail Forex transaction.

29.    By the conduct described in paragraphs 5 through 21 above, Taylor, individually and as an agent of OTC and FCTA, violated Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (C), and Regulations 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3), by failing to disclose material

facts to actual and prospective pool participants, misrepresenting material facts to actual and prospective pool participants, misappropriating their funds in connection with the order to make or the making of a futures contract, and failing to disclose that misappropriation to pool participants, for or on behalf of actual and prospective pool participants, with the use of interstate wires for transfer of funds, websites, and other electronic communication devices.

### E. OTC and FCTA Violated Section 6*o*(1) of Act

30.    Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1), prohibits a CPO from using the mails or any other means of interstate commerce, directly or indirectly:

> (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

> (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

31.    Section 1a(11)(A) of the Act, 7 U.S.C. § 1a(11)(A), defines a CPO as any person engaged in a business that is of the nature of a commodity pool and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, for the purpose of trading in commodity interests.

32.     By the conduct described in paragraphs 5 through 21 above, Taylor, individually and as an agent of OTC and FCTA, acted as an unregistered CPO because he operated or solicited funds, securities, or property for a commodity pool that was not an eligible contract participant and engaged in Forex transactions without being registered as required by the relevant provisions in the Act and/or the Commission's Regulations.

33.     Furthermore, by the conduct described in paragraphs 5 through 21 above, Taylor, individually and as an agent of OTC and FCTA, employed a device, scheme or artifice to defraud pool participants and prospective pool participants and engaged in a transaction, practice or course of business which operated as a fraud or deceit upon pool participants and prospective pool participants in violation of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A), (B), as set forth above, including by making fraudulent representations regarding Taylor's trading expertise, guaranteeing profits and interest in connection with futures trading, failing to disclose the risks of trading commodity futures, misappropriating pool participants' funds, failing to disclose this misappropriation of pool participants' funds, and making fraudulent representations regarding trading losses and investment performance and activities.

## F. OTC and FCTA Violated Section 6m(1) of the Act

34.     Section 4m(1) of the Act, 7 U.S.C. § 6m(1), makes it unlawful for any CPO, unless registered with the Commission, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO.

35.     By the conduct described in paragraphs 5 through 21 above and as more fully described in relation to his violation of Section 4*o*(1), Taylor, individually and as an agent of OTC and FCTA, acted as a CPO without the benefit of registration as a CPO.  Furthermore, Taylor, individually and as an agent of OTC and FCTA, in connection therewith, used the mails or other means or instrumentalities of interstate commerce.

36.     By this conduct, Taylor, individually and as an agent of OTC and FCTA, violated Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

## G. Civil Monetary Penalty is Appropriate

37.     Under Section 6c(d)(1)(A) of the Act, 7 U.S.C. § 13a-1(d)(1)(A), the CFTC may seek and the Court shall have jurisdiction to impose, on any person found in the action to have committed any violation, a civil penalty in the amount of not more than the greater of (1) triple the monetary gain to defendant for each violation of the Act, or (2) $140,000 for each violation of the Act.  7 U.S.C. § 13a-1(d)(1)(A); 17 C.F.R. § 143.8.

38.     OTC and FCTA, by and through Taylor, received a total of at least $529,000 in actual monetary gain as a result of their violations of the Act and the Regulations.  The Court concludes that the Commission is entitled to an award of a civil monetary penalty against OTC and FCTA in the amount of $1,000,000 in accordance with 7 U.S.C. § 13a-1(d)(1)(A).

39.     Judgment is, therefore, appropriate in the amount of $1,000,000 against OTC and FCTA, jointly and severally with the Defendant Barry C. Taylor, and in favor of the Plaintiff.

### H.     Injunctive Relief is Appropriate

40.     Under Section 6c of the Act, 7 U.S.C. § 13a-1, injunctive relief is appropriate where there is a reasonable likelihood of future violations. Unless restrained and enjoined by this Court, OTC and FCTA, by and through Taylor, are likely to continue to engage in the acts and practices alleged in the Complaint, or in similar acts and practices.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Defendants OTC and FCTA have violated Sections 4b(a)(2)(A) and (C), 4m(1), and 4o(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(A), (C), 6m(1) and 6o(1), and Commission Regulations 5.2(b)(1) and (3), 17 C.F.R. §§ 5.2(b)(1), (3).  Therefore, default judgment shall be and hereby is

entered in favor of Plaintiff U.S. Commodity Futures Trading Commission and against Defendants OTC and FCTA as follows:

## IV. PERMANENT INJUNCTIVE RELIEF GRANTED

### IT IS HEREBY ORDERED THAT:

41.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, and this Court's equitable powers, Defendants OTC and FCTA are permanently restrained, enjoined and prohibited from directly or indirectly engaging in conduct in violation of Sections 4b(a)(2)(A) and (C), 4m(1), and 4*o*(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(A), (C), 6m(1) and 6*o*(1) (2012), and Commission Regulations 5.2(b)(1) and (3), 17 C.F.R. §§ 5.2(b)(1), (3) (2014).

**IT IS FURTHER ORDERED** that:

42.     Defendants OTC and FCTA are hereby permanently restrained, enjoined, and prohibited from directly or indirectly:

(A) Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

(B) Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2014)) for their own personal account or for any account in which they have a direct or indirect interest;

(C) Having any commodity interests traded on their behalf;

(D) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

(E) Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

(F) Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and/or

(G) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2014)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)), registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

**IT IS FURTHER ORDERED** that:

43.    The injunctive provisions of this Order shall also be binding upon any person who acts in the capacity of agent, employee, attorney,

successors and/or assign of OTC and/or FCTA and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with OTC and/or FCTA.

## V.    CIVIL MONETARY PENALTIES

44.    OTC and FCTA shall pay a civil monetary penalty ("CMP"), jointly and severally with the Defendant Barry C. Taylor, in the amount of $1,000,000, plus post-judgment interest ("CMP Obligation").

45.    Post-judgment interest on the CMP Obligation shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

46.    OTC and/or FCTA shall pay the CMP Obligation by making electronic funds transfer, U.S. Postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made by other than electronic funds transfer, the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

Commodity Futures Trading Commission
Division of Enforcement
Attn: Accounts Receivables --- AMZ 340
E-mail Box: 9-AMC-AMZ-AR-CFTC
DOT/FAA/MMAC
6500 S. MacArthur Blvd.

Oklahoma City, Oklahoma 73169
Telephone: (405) 954-5644

47.     If payment by electronic transfer is chosen, OTC and/or FCTA shall contact Linda Zurhorst or her successor at the above address to receive payment instructions and shall fully comply with those instructions.  OTC and/or FCTA shall accompany payment of the CMP with a cover letter that identifies OTC and/or FCTA and the name and docket number of the proceedings.  OTC and/or FCTA shall simultaneously submit copies of the cover letter and the form of payment to: (1) the Director, Division of Enforcement, Commodities Future Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and (2) the Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

48.     Partial Satisfaction: Any acceptance by the Commission of partial payment of Defendants' CMP Obligation shall not be deemed a waiver of their obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

## VI.  MISCELLANEOUS PROVISIONS

**IT IS FURTHER ORDERED THAT:**

49.    Notice: All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

> Rosemary Hollinger
> Deputy Director, Division of Enforcement
> U.S. Commodity Futures Trading Commission
> 525 W. Monroe Street, Suite 1100
> Chicago, IL 60661

All such notices to the Commission shall reference the name and docket number of this action.

50.    Change of Address/Phone: Until such time as Defendants satisfy in full their CMP Obligation as set forth in this Order, Defendants shall provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten (10) calendar days of the change.

51.    Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action.

52.    Copies of this Order may be served by any means, including facsimile transmission, email, United Parcel Service and U.S. mail, upon

Defendants and any other entity or person that may be subject to any provisions of this Order.

**IT IS FURTHER ORDERED** that there being no just cause for delay, the Clerk of the Court shall enter final judgment against Defendants OTC Investments LLC, and Forex Currency Trade Advisors, LLC.

**IT IS SO ORDERED.**

Signed: January 19, 2018

Martin Reidinger
United States District Judge